Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> NEXVET BIOPHARMA PUBLIC LIMITED COMPANY, MARK HEFFERNAN, GEORGE GUNN, CHRISTOPHER BROWN, ASHRAF HANNA, CORMAC KILTY, JOSEPH MCCRACKEN, RAJIV PATEL, and JOHN PAYNE, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Stephen Bushansky ("Plaintiff"), individually and on behalf all others similarly situated, by and through his undersigned counsel, alleges the following upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

COMPLAINT

## NATURE OF THE ACTION

1.     This is a class action brought on behalf of the public stockholders of Nexvet Biopharma Public Limited Company ("Nexvet" or the "Company") against Nexvet and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Nexvet will be acquired by Zoetis Inc. ("Zoetis"), through its wholly-owned subsidiary Zoetis Belgium S.A. ("Bidco") (the "Proposed Transaction").

2.     On April 13, 2017, Nexvet and Zoetis issued a joint press release announcing that they had entered into a Transaction Agreement (the "Merger Agreement") to sell Nexvet to Zoetis. Under the terms of the Merger Agreement, Zoetis will acquire all outstanding shares of Nexvet for $6.72 in cash per Nexvet common share (the "Merger Consideration").  The Proposed Transaction is valued at approximately $85 million.

3.     On May 11, 2017, Nexvet filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy") with the SEC.  The Proxy, which recommends that Nexvet stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Nexvet's management's projections, utilized by the Company's financial advisor, Evercore Group L.L.C. ("Evercore") in its financial analyses; (ii) the valuation analyses prepared by Evercore in connection with the rendering of its fairness opinion; (iii) material omissions concerning Evercore's potential conflicts of interest; and (iv) material information concerning the sale process leading up to the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as

Nexvet stockholders need such material information in order to make a fully-informed voting decision in connection with the Proposed Transaction.

4. In short, unless remedied, Nexvet's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Nexvet's United States Operations headquarters are located in this district at 275 Post Street, 4th Floor, San Francisco, California 94108.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Nexvet.

9. Defendant Nexvet is an Ireland public limited company with its principal executive offices located at Unit 5, Sragh Technology Park, Rahan Road, Tullamore, Co. Offaly, R35 FR98, Ireland and its U.S. Operations headquarters located in San Francisco, California. The Company is

COMPLAINT

a clinical-stage biopharmaceutical company in the field of companion animal therapeutics. Nexvet's common stock is traded on the NASDAQ under the ticker symbol "NVET."

10.    Defendant Mark Heffernan ("Heffernan") is one of the Nexvet's co-founders and has been Chief Executive Officer ("CEO") and a director of the Company since April 2011.

11.    Defendant George Gunn ("Gunn") has been Chairman of the Board since April 2015.

12.    Defendant Christopher Brown ("Brown") has been a director of the Company since November 2013 and previously served as Chairman of the Board from November 2013 to April 2015.

13.    Defendant Ashraf Hanna ("Hanna") has been a director of the Company since September 2014.

14.    Defendant Cormac Kilty ("Kilty") has been a director of the Company since November 2013.

15.    Defendant Joseph McCracken ("McCracken") has been a director of the Company since September 2013.

16.    Defendant Rajiv Patel ("Patel") has been a director of the Company since February 2015.

17.    Defendant John Payne ("Payne") has been a director of the Company since December 2013.

18.    Defendants Heffernan, Gunn, Brown, Hanna, Kilty, McCracken, Patel and Payne are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19.    Zoetis is a Delaware corporation and a global leader in the discovery, development, manufacture and commercialization of animal health medicines and vaccines.

20.     Bidco is a limited liability company incorporated under the laws of Belgium and an indirect wholly-owned subsidiary of Zoetis.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Nexvet common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

23.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of April 30, 2017, there were 11,916,712 ordinary shares of the Company issued and outstanding.  All members of the Class may be identified from records maintained by Nexvet or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, inter alia:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer

irreparable injury were the Proposed Transaction consummated.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

28.     Nexvet is a clinical-stage biopharmaceutical company focused on transforming the field of companion animal therapeutics by developing and commercializing novel, species-specific biologics.  The Company's platform technology, "PETization," is an algorithmic approach that enables Nexvet to rapidly create monoclonal antibodies, a type of biologic, that are designed to be recognized as "self" or "native" by an animal's immune system.  PETization is designed to build upon the safety and efficacy data from clinically tested human therapies to create new therapies for companion animals.

29.     Nexvet's most clinically advanced product candidate is ranevetmab.  The ranevetmab study's design was agreed under protocol concurrence with the Center for Veterinary Medicine ("CVM") at the U.S. Food and Drug Administration ("FDA").  The results of this study constitute a substantial body of efficacy data that the Company has filed with the CVM and intends to use as the basis for its planned submissions for marketing authorizations in both the U.S. and

Europe.  Nexvet has a master collaboration, supply and distribution agreement, and a specific distribution agreement for ranevetmab with Virbac S.A., one of the larger animal health companies in the world.

30.     The Company is continuing a pivotal field efficacy and safety study for its next most advanced product candidate, frunevetmab, anti- nerve growth factor monoclonal antibodies for the control of pain associated with osteoarthritis in cats.  It is a placebo-controlled, randomized, double-blinded study with a target enrollment of 250 cats with osteoarthritis at approximately twenty clinical sites around the U.S.

**The Sale Process**

31.     During the period between March 21, 2016 and May 17, 2016, Nexvet and its advisors from time to time discussed the market opportunities for Nexvet to raise capital, the animal health industry, and the possibility of engaging with parties concerning a possible strategic license or sale transaction.

32.     From May 17, 2016, to June 1, 2016, defendant Heffernan met with senior executives of Zoetis to discuss the possibility of a strategic transaction between Nexvet and Zoetis.

33.     On May 31, 2016, Party A delivered an indication of interest to the Company regarding a proposed licensing of Nexvet intellectual property and strategic collaboration.  That same day, Zoetis also delivered an indication of interest to the Company, proposing the acquisition of all share capital of Nexvet, subject to an exclusivity period.  The Proxy fails to disclose the terms of Party A's and Zoetis' indications of interest.

34.     On June 6, 2016, Zoetis submitted a revised proposal based on an enterprise value of $103 million, net of an assumed cash on hand of at least $37 million.

35.     Throughout June 2016, Nexvet, Zoetis and their respective advisors continued discussions regarding the structure and material terms of a potential transaction.  During this time,

Nexvet also reviewed the status of discussions with Party A, but decided to enter into an exclusivity agreement with Zoetis which began on June 13, 2016 and ended on July 22, 2016.

36.     On July 14, 2016, Evercore presented to the Company a summary of Nexvet's standalone projections, an estimate of the synergies that a potential acquiror might be able to achieve, and a preliminary valuation analysis of Nexvet's standalone projections and of the potential synergies.

37.     On July 19, 2016, Zoetis informed Nexvet it was discontinuing further discussions of an acquisition with the Company and withdrawing its offer.

38.     From August 2016 to January 2017, the Company re-engaged in discussions with Party A with respect to a licensing or strategic collaboration.   During this period, Nexvet management also engaged with executives from various companies in the industry to explore interest in possible licensing or acquisition transactions.

39.     On October 4 and October 5, 2016, defendant Heffernan met with the leadership teams of Party A and Party B, respectively, to discuss a potential licensing transaction.

40.     On December 21, 2016, the Company received a licensing proposal from Party B. The Proxy fails to disclose the terms of Party B's proposal.

41.     On January 3, 2017, Nexvet received an informal acquisition proposal from Party C. Party C subsequently declined to formalize its proposal.   The Proxy fails to disclose the terms of Party C's informal proposal.

42.     On January 20, 2017, Nexvet received a licensing proposal from Party D.   The next day, the Company received a revised licensing proposal from Party B.   The Proxy fails to disclose the terms of both proposals.

43.     On January 26, 2017, Company management held a presentation for Party E at Evercore's offices.

44.     On February 4, 2017, Nexvet management presented an update to the Board regarding a potential license or strategic collaboration with Party E and certain other parties interested in a license of Nexvet's lead product candidates, ranevetmab and frunevetmab.

45.     On February 10, 2017, Nexvet received two non-binding licensing proposals from Party E for each of Nexvet's lead product candidates, and Party E began due diligence.  On the same day, Party D submitted a revised licensing proposal.  Evercore engaged with Party D to clarify its proposal and inquired as to Party D's interest in exploring a potential acquisition.  The Proxy fails to set forth the details of either of Party E's proposals as well as Party D's revised proposal.

46.     On February 16, 2017, the Board authorized Company management to re-engage Zoetis.  Defendant Gunn subsequently contacted the CEO of Zoetis to invite a new offer to acquire the Company.  Zoetis then began conducting due diligence until signing the Merger Agreement.

47.     On February 24, 2017, Nexvet received a licensing proposal from Party F.  The Proxy fails to disclose the terms of Party F's proposal.

48.     On March 3, 2017, the Company received an indication of interest from Zoetis to acquire the outstanding share capital of Nexvet for an aggregate value in the range of $70 million to $80 million in cash, plus expected cash on hand at closing.

49.     On March 17, 2017, Nexvet received an indication of interest from Party D to acquire the outstanding share capital of Nexvet for $48 million in cash plus $30 million of additional consideration contingent on the performance of the Company's lead product candidates, representing an aggregate transaction value of up to $78 million, or $6.17 per share.

50.     On March 22, 2017, Party E provided Evercore a revised licensing proposal with lower terms than its prior proposal, however the Proxy fails to disclose the terms of either of Party E's proposals.  Following a Board meeting, Party E indicated it was unlikely to pursue an acquisition of the Company.

51.     On March 28, 2017, Nexvet received a letter of interest from Zoetis to acquire the outstanding share capital of Nexvet for $70 million in cash, or $5.54 per share.  On March 31, 2017, defendant Gunn met with the CEO of Zoetis who agreed in principle to increase Zoetis' offer to $85 million in cash, or $6.72 per share.  Nexvet received a revised letter of interest on April 5, 2017 from Zoetis confirming the increased offer.

52.     On April 10, 2017, the Board held a meeting to discuss all potential offers and the terms of Zoetis' revised offer.

53.     On April 11, 2017, Party D informed Evercore it was unwilling to improve the terms of its acquisition proposal at that time.

54.     The next day, Evercore delivered its fairness opinion and the Board approved the Merger Agreement.

**The Proposed Transaction is Inadequate**

55.     On April 13, 2017, Nexvet and Zoetis issued a joint press release stating, in relevant part:

> PARSIPPANY, N.J. & TULLAMORE, Ireland--Apr. 13, 2017-- Zoetis Inc. (NYSE:ZTS) and Nexvet Biopharma plc (Nasdaq:NVET) today announced an agreement in which Zoetis, through a wholly owned subsidiary ("Zoetis Bidco"), will purchase Nexvet, an innovator in monoclonal antibody therapies for companion animals, for a purchase price of US$6.72 per share, representing an aggregate equity valuation of approximately US$85 million. The acquisition will strengthen Zoetis' pipeline of solutions for chronic pain management in dogs and cats, which represents an area of high-need in companion animal health.
>
> This per share consideration represents a 66% premium over Nexvet's closing price on April 12, 2017.
>
> The board of directors of Nexvet has unanimously approved the acquisition, which is being implemented by means of a scheme of arrangement, a statutory procedure under Irish law. The acquisition is subject to approval by Nexvet's shareholders and the Irish High Court and other customary conditions, and it is currently expected to be completed during the second half of 2017.
>
> Nexvet, founded in 2010 and headquartered in Tullamore, Ireland, is a biologic therapeutics company with a pipeline of monoclonal antibody (mAb) therapies being

- 10 -

developed for companion animals in pain and other therapeutic areas. The company has research and development operations in Melbourne, Australia, a manufacturing facility in Tullamore, and a U.S. office in San Francisco.

**Acquisition Is a Strategic Fit**

"This acquisition is a strategic fit that brings to Zoetis an R&D organization that shares our commitment to industry-leading innovation," said Dr. Alejandro Bernal, Executive Vice President and Group President, Strategy, Commercial and Business Development at Zoetis. "It will strengthen our R&D pipeline in monoclonal antibodies and help sustain our category leadership in chronic pain management for companion animals, which is an area poised for innovation with new mAb therapies. The transaction demonstrates how we continue to invest to drive innovation and future growth."

"We are certain that Zoetis, with its leadership in R&D, high quality manufacturing, marketing excellence, global scale and strong customer relationships, is the ideal company to guide our monoclonal antibody candidates through development into commercialization," said Dr. George Gunn, Chairman of the Board of Nexvet. "We see the integration with Zoetis as the logical next step to realize our ambition to bring groundbreaking antibody therapeutics to market."

**A Promising Pipeline of First-In-Class Antibody Therapies for Pain**

Therapies to treat chronic pain in companion animals represent a global area valued at an estimated US$400 million a year[1]. Nexvet's pipeline product ranevetmab, a mAb targeting nerve-growth factor (NGF) for treatment of chronic pain associated with osteoarthritis in dogs, would, upon approval, be the companion animal industry's first monoclonal antibody therapy administered monthly by injection for chronic pain. Ranevetmab would enable Zoetis to expand its portfolio of solutions for chronic pain in dogs.

Nexvet is also developing frunevetmab, a monoclonal antibody targeting NGF to treat chronic pain associated with osteoarthritis in cats. Feline treatments for pain are limited, and frunevetmab could open up a new opportunity in feline pain that is underserved today.

Zoetis has been a leader in the treatment of osteoarthritis pain and inflammation in dogs for two decades with the company's Rimadyl®(carprofen), the first non-steroidal anti-inflammatory drug (NSAID) product approved for use in dogs. Zoetis also developed and markets the NSAID product Trocoxil (mavacoxib), a COX-2 inhibitor approved in the European Union and other international markets to treat arthritis pain and inflammation in dogs.

Zoetis has earned a reputation as a pioneer in bringing veterinarians first-in-class antibody therapy solutions for areas of high unmet need in animal health. The company's mAb therapy Cytopoint™ was licensed in the U.S. in December 2016 to

control the clinical signs such as itching associated with atopic dermatitis in dogs. Zoetis anticipates its approval in the European Union this year.

"We recognize the significant achievements of the Nexvet R&D team," said Dr. Catherine Knupp, Executive Vice President and President, Research and Development at Zoetis. "The research programs initiated by Nexvet will be integrated into our operation to leverage the scale and experience of Zoetis' existing global R&D expertise."

**Terms of the Transaction**

Under the terms of the proposed acquisition, Nexvet shareholders will receive US$6.72 in cash per ordinary share. The cash consideration payable by Zoetis under the terms of the proposed acquisition will be funded by cash on hand. It is intended that the acquisition will be implemented by means of a scheme of arrangement ("Scheme Document") under Chapter 1 of Part 9 of the Irish Companies Act 2014. It is intended that the Scheme Document, which will form part of the Proxy Statement filed by Nexvet with the United States Securities and Exchange Commission (the "SEC") containing the full terms and conditions of the acquisition (including notices of the shareholder and scheme meetings), and the balance of the Proxy Statement will be mailed as soon as practicable after the date of this announcement to Nexvet shareholders, and, for information only, to holders of Nexvet's warrants, options and restricted share units. The Nexvet Proxy Statement, including the Scheme Document, will be made available by Nexvet at www.nexvet.com.

**Insiders' Interests in the Proposed Transaction**

56.     Zoetis and Nexvet insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Nexvet.

57.     Nexvet insiders stand to reap substantial financial benefits for securing the deal with Zoetis.  Each outstanding Company option and restricted share unit, having a value less than the Merger Consideration upon consummation of the Proposed Transaction, will be converted into the right to receive cash payments.  The following table summarizes the cash payments the Company's executive officers and directors stand to receive in connection with their ordinary shares, options and restricted shares of Company stock upon consummation of the Proposed Transaction:

| Name | Ordinary Shares Held (#) | Value of Ordinary Shares Held (1) | Shares Underlying Nexvet Options (#) | Value of Ordinary Shares Underlying Nexvet Options ($) (2) | Shares Underlying Nexvet RSUs (#) | Value of RSUs ($) (3) | Aggregate Value for Equity ($) |
|---|---|---|---|---|---|---|---|
| Christopher Brown | 12,400 | $ 83,328 | 10,680 | $ 70,435 | 3,600 | $ 23,742 | $ 177,505 |
| George Gunn | 38,500 | 258,720 | — | — | 5,600 | 36,932 | 295,652 |
| Ashraf Hanna | 13,420 | 90,182 | — | — | 4,100 | 27,040 | 117,222 |
| Mark Heffernan | 292,754 | 1,967,307 | 66,076 (4) | 111,822 | 217,572 | 1,434,887 | 3,514,016 |
| Cormac Kilty | 151,564 | 1,018,510 | — | — | 3,600 | 23,742 | 1,042,252 |
| Joseph McCracken | 12,300 | 82,656 | — | — | 4,100 | 27,040 | 109,696 |
| Rajiv Patel | 2,658,176 (5) | 17,862,943 (5) | — | — | 5,100 | 33,635 | 17,896,577 |
| John Payne | 13,395 | 90,014 | — | — | 3,600 | 23,742 | 113,756 |
| Geraldine Farrell | 30,760 | 206,707 | 9,060 (6) | 59,751 | 47,018 | 310,084 | 576,542 |
| Jürgen Horn | — | — | 60,000 | 97,200 | 63,000 | 415,485 | 512,685 |
| Damian Lismore | 66,634 | 447,780 | 11,079 (4) | 73,066 | 106,250 | 700,719 | 1,221,565 |

58.     Moreover, if they are terminated in connection with the Proposed Transaction, Nexvet's named executive officers stand to receive substantial cash severance payments.  However, the Proxy fails to quantify the cash severance payments.

**The Proxy Contains Material Misstatements or Omissions**

*Materially Incomplete and Misleading Disclosures Concerning the Company's Financial Projections*

59.     The Proxy does not disclose the following information concerning Nexvet management's financial projections:

(a)     The Proxy sets forth that the projections were risk adjusted based on the assessment of Nexvet's management of a possibility of success ("POS") assumption of 80.0% for

- 13 -

ranevetmab and a POS assumption of 55.0% for frunevetmab, but fails to disclose (i) the risk-adjusted financial forecasts for the fiscal years 2017 through 2032, including the risk-adjusted estimates of the revenues to be generated from each of the Company's main products (ranevetmab and frunevetmab); and (ii) the sources of the quantification of the probabilities assigned by Company management.

60.     The omission of this information renders the statements in the "Certain Financial Projections" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

*Materially Incomplete and Misleading Disclosures Concerning the Financial Analyses Performed by Evercore*

61.     The Proxy contains Evercore's written fairness opinion, and describes the various valuation analyses Evercore performed in support of its opinion. However, the description of Evercore's opinion and analyses fail to include key inputs and assumptions underlying the analyses. Without this information, as described below, Nexvet's public stockholders are unable to fully understand the analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion rendered in support of the Proposed Transaction.

62.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the unlevered after tax free cash flows utilized by Evercore in its analysis after taking into account the risk-adjustments made to the projections based on the POS assumption of 80% for ranevetmab and the POS assumption of 55% for frunevetmab; (ii) Evercore's basis for using an assumed perpetuity growth rate range of negative 10% - negative 20% in calculating a range of terminal values for Nexvet; (iii) the individual inputs and assumptions used to calculate the discount rate range utilized by Evercore; (iv) the implied terminal value multiples resulting from the analysis; and (v) Nexvet's management's estimate of the net cash of Nexvet as of June 30, 2017 used in the analysis.

63.     With respect to Evercore's *Trading Multiple Analysis*, the Proxy fails to disclose: (i) the individual multiples for the publicly traded commercial-stage animal health companies observed by Evercore in its analysis; and (ii) why Nexvet's revenues associated with international profit sharing arrangements were excluded from the analysis.

64.     With respect to Evercore's *Precedent Transactions Analysis*, the Proxy fails to disclose: (i) the individual multiples for the selected animal health transactions observed by Evercore in its analysis; and (ii) why Nexvet's revenues associated with international profit sharing arrangements were excluded from the analysis.

65.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     From page 63 of the Proxy:

### Discounted Cash Flow Analysis

Evercore performed a discounted cash flow analysis to calculate a range of implied equity value per share of Nexvet Shares as of June 30, 2017 utilizing estimates of the standalone, unlevered, after-tax free cash flows Nexvet was expected to generate for the fiscal years 2018 through 2032 based on projections from Nexvet's management, as reflected in the line "Unlevered FCF" in the summary of the projections provided by Nexvet's management to Evercore and the Nexvet Board set out below the heading "Certain Financial Projections" in paragraph 12 of Part 3 ( Information Required under Section 452 of the Act ) of this document. In evaluating other considerations related to the execution risk of Nexvet's standalone plan, Evercore assumed that Nexvet will be a clinical-stage company over the near term. Evercore noted that the business plan assumes a cash flow breakeven in fiscal year 2021. Evercore further noted that in order to meet the projections provided by Nexvet's management, Nexvet would need to raise a significant amount of additional capital relative to its current market capitalization, which would be challenging given the current financing environment for clinical-stage pharmaceutical and biotechnology companies. Any near term equity financing would likely only provide a portion of the financing need.

Evercore calculated a range of terminal values for Nexvet, using an assumed perpetuity growth rate range of negative 10%—negative 20%. Evercore then discounted Nexvet's projected, unlevered free cash flows for fiscal years 2018 through 2032 and the range of terminal values for Nexvet to a present value as of June 30, 2017 using discount rates ranging from 12.0% to 16.0% to derive a range of implied equity values for Nexvet, assuming a mid-year convention. The discount

rates were based on Evercore's judgment of the estimated range of Nexvet's weighted average cost of capital. At the direction of Nexvet's management, Evercore assumed an effective tax rate of 16% and working capital to be 20.0% of sales. Based on these ranges of implied equity values and Nexvet's management's estimate of the net cash of Nexvet as of June 30, 2017, Evercore calculated a range of implied equity values per Nexvet Share. The projections were risk adjusted based on the assessment of Nexvet's management of a possibility of success (" POS ") assumption of 80.0% for ranevetmab and a POS assumption of 55.0% for frunevetmab. This analysis resulted in a range of illustrative implied equity values per Nexvet Share of approximately $4.15 to $7.72, as compared to the consideration of $6.72 per Nexvet Share.

       (b)     From pages 63-64 of the Proxy:

*Trading Multiple Analysis*

Evercore calculated certain financial multiples for the following selected group of publicly traded commercial-stage animal health companies:

- Zoetis Inc.

- Dechra Pharmaceuticals PLC

- Virbac S.A.

- Phibro Animal Health Corporation

- Vetoquinol SA

- ECO Animal Health Group PLC

Evercore also calculated certain financial multiples for the following selected group of publicly traded clinical-stage animal health companies:

- Aratana Therapeutics Inc.

- Kindred Biosciences Inc.

Although none of these companies are directly comparable to Nexvet, Evercore selected these companies based on its professional judgment because they are animal health companies with business characteristics that for purposes of its analysis Evercore considered similar to the business characteristics of Nexvet.

For each of the selected companies identified above, Evercore calculated multiples of enterprise value (defined as equity market capitalization plus total debt, plus preferred equity and minority interest, less cash and cash equivalents) to estimated net revenue for calendar years 2017 through 2020, based on closing stock prices as of April 11, 2017 and financial data, which Evercore obtained from filings made

with the SEC and consensus estimates based on publicly available equity research analysts' projections.

The results of these calculations were as follows for commercial stage companies:

| | Equity Value/Revenue Multiples | | | | 2017-2020E Revenue CAGR |
| | 2017E | 2018E | 2019E | 2020E | |
|---|---|---|---|---|---|
| Mean | 3.5x | 3.2x | 3.1x | 3.0x | 5.5% |
| Median | 3.2x | 3.0x | 2.8x | 2.6x | 5.6% |
| High | 5.8x | 5.5x | 5.2x | 4.9x | 8.4% |
| Low | 1.5x | 1.5x | 1.7x | 1.7x | 2.3% |

The results of these calculations were as follows for all companies:

| | Equity Value/Revenue Multiples | | | | 2017-2020E Revenue CAGR |
| | 2017E | 2018E | 2019E | 2020E | |
|---|---|---|---|---|---|
| Mean | 4.3x | 3.6x | 2.8x | 2.4x | 63.3% |
| Median | 4.5x | 3.8x | 2.0x | 1.7x | 7.0% |
| High | 9.2x | 6.1x | 5.2x | 4.9x | 258.9% |
| Low | 1.5x | 1.5x | 1.7x | 1.2x | 2.3% |

Based on the multiples it derived for the selected peer group companies and based on its professional judgment and experience, Evercore applied an enterprise value/net revenue multiple reference range of 3.0x-3.5x to Nexvet's management's projected revenues for calendar years 2021 and 2022. The projections were risk adjusted based on the assessment of Nexvet's management of a POS assumption of 80.0% for ranevetmab and a POS assumption of 55.0% for frunevetmab and excluded revenues associated with international profit sharing arrangements. These projected revenues were discounted to present value as of June 30, 2017 using a discount rate of 14.0% and a discount period of 3.75 years for calendar year 2021 and 4.75 years for calendar year 2022. This analysis implied an equity value range per Nexvet Share of $5.37 to $6.11 for calendar year 2021 and an equity value range per Nexvet Share of $6.57 to $7.50 for calendar year 2022, as compared to the consideration of $6.72 per Nexvet Share.

      (c)     From pages 64-65 of the Proxy:

*Precedent Transactions Analysis*

Evercore performed an analysis of selected animal health transactions to compare multiples paid in other transactions to the multiples implied in the Acquisition. Evercore analyzed a group of 14 merger and acquisition transactions that were announced between 2012 and 2016 involving the acquisition of animal health companies. The selected transactions are set forth below:

| Date Announced | Acquiror | Target |
|---|---|---|
| 10/5/16 | Elanco Animal Health, Inc. | Boehringer Ingelheim Vetmedica Inc. |
| 9/16/16 | Dechra Pharmaceuticals PLC | Apex Laboratories Pty Ltd |

COMPLAINT

| Date Announced | Acquiror | Target |
|---|---|---|
| 7/1/16 | Merck & Co., Inc. | Vallée S.A. |
| 3/15/16 | Dechra Pharmaceuticals PLC | Putney, Inc. |
| 12/15/15 | Boehringer Ingelheim Corporation | Merial Ltd |
| 11/2/15 | Zoetis Inc. | PHARMAQ AS |
| 11/17/14 | Zoetis Inc. | Abbott Animal Health, Inc. |
| 4/22/14 | Elanco Animal Health, Inc. | Novartis Animal Health, Inc. |
| 2/27/14 | Vetoquinol SA | Bioniche Animal Health |
| 1/6/14 | Aratana Therapeutics, Inc. | Okapi Sciences NV |
| 10/14/13 | Aratana Therapeutics, Inc. | Vet Therapeutics, Inc. |
| 2/1/13 | Perrigo Company PLC | Velcera, Inc. |
| 9/14/12 | Bayer HealthCare LLC | Teva Animal Health, Inc. |
| 4/5/12 | Dechra Pharmaceuticals PLC | Eurovet Animal Health B.V. |

Using publicly available information, Evercore reviewed implied transaction data for the 14 transactions involving target companies in the animal health industry referred to above. For each of the selected transactions, Evercore reviewed enterprise values in the selected transactions, as multiples, to the extent publicly available, of latest 12 months revenue. The results of this analysis indicated a mean value of 4.3x and a median value of 3.9x. Based on the multiples it derived for the selected transactions and based on its professional judgment and experience, Evercore applied an enterprise value/net revenue multiple reference range of 3.5x-4.5x to Nexvet's management's projected revenues for calendar years 2021 and 2022. The projections were risk adjusted based on the assessment of Nexvet's management of a POS assumption of 80.0% for ranevetmab and a POS assumption of 55.0% for frunevetmab and excluded revenues associated with international profit sharing arrangements. These projected revenues were discounted to present value as of June 30, 2017 using a discount rate of 14.0% and a discount period of 4.50 years for calendar year 2021 and 5.50 years for calendar year 2022. This analysis implied an equity value range per Nexvet Share of $5.62 to $6.96 for calendar year 2021 and an equity value range per Nexvet Share of $6.89 to $8.57 for calendar year 2022, as compared to the consideration of $6.72 per Nexvet Share.

***Materially Incomplete and Misleading Disclosures Concerning Evercore's Potential Conflicts of Interest***

66.    In addition, the Proxy fails to disclose material information concerning the potential conflicts of interest faced by Evercore in acting as the Company's financial advisor.

67.    The Proxy fails to disclose whether Evercore has provided any services to Nexvet, Zoetis or any of their affiliates in the past two years, and if so, the nature of those services and the amount of compensation Evercore earned for those services.

68.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection and implementation of strategic alternatives.

69.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     From pages 66-67 of the Proxy:

> Pursuant to the terms of Evercore's engagement letter with Nexvet, Evercore is entitled to receive a fee of $1.5 million if the Acquisition is consummated, of which $500,000 is owed in connection with rendering its opinion to the Nexvet Board and is fully creditable against any fees to be paid in connection with the consummation of the Acquisition. In addition, Nexvet agreed to reimburse Evercore's reasonable expenses and to indemnify Evercore and related parties for certain liabilities, including liabilities under federal securities laws, arising out of its engagement. Evercore may provide financial or other services to Zoetis in the future and in connection with any such services Evercore may receive compensation.

> In the ordinary course of business, Evercore or its affiliates may actively trade the securities, or related derivative securities, or financial instruments of Nexvet, Zoetis and their respective affiliates, for its own account and for the accounts of its customers and, accordingly, may at any time hold a long or short position in such securities or instruments.

> Nexvet engaged Evercore to act as a financial adviser based on Evercore's qualifications, experience and reputation. Evercore is an internationally recognized investment banking firm and is regularly engaged in the valuation of businesses in connection with mergers and acquisitions, leveraged buyouts, competitive biddings, private placements and valuations for corporate and other purposes.

### Materially Incomplete and Misleading Disclosures Concerning the Sale Process

70.     The Proxy also fails to disclose or misstates material information relating to the sale process leading up to the Proposed Transaction.

71.     According to the Proxy, on May 31, 2016, Party A delivered an indication of interest to the Company regarding a "proposed licensing of Nexvet intellectual property and strategic collaboration."  On the same day, the Proxy states that "Zoetis delivered a preliminary non-binding indication of interest to Nexvet proposing the acquisition of all of the share capital of Nexvet."  The Proxy fails to disclose any details regarding Party A's and Zoetis' indications of interest.  Similarly, from December 2016 through February 2017, the Company's management received licensing

- 19 -

proposals from Parties B, D, E, and F, and received an informal acquisition proposal from Party C. The Proxy fails to set forth any details regarding these proposals as well.

72.     The Proxy also fails to disclose whether the Company entered into confidentiality agreements with Parties A, B, C, D, E, or F, and if so, whether any of these confidentiality agreements contain standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that operate to preclude these parties from making a topping bid for the Company.

73.     Further, the Proxy fails to disclose the timing and nature of all communications regarding future directorship and/or employment of Nexvet's directors and officers, including who participated in all such communications. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to Nexvet stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

74.     Defendants' failure to provide Nexvet stockholders with the foregoing material information renders the statements in the "Background to and Reasons for Recommending the Acquisition" section of the Proxy false and/or materially misleading and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

75.    Plaintiff repeats all previous allegations as if set forth in full.

76.    SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

77.    During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

78.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.   The Proxy misrepresented and/or omitted material facts, including material information about the sale process for the Company, potential conflicts of interest faced by the Company's financial advisor Evercore, the financial analyses performed by Evercore, and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

79.    The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed

Transaction.   In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

80.   By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

81.   Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

82.   Plaintiff repeats all previous allegations as if set forth in full.

83.   The Individual Defendants acted as controlling persons of Nexvet within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers or directors of Nexvet and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

84.   Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

86.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

87.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

88.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Nexvet, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Nexvet stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 30, 2017

**WEISSLAW LLP**
Joel E. Elkins

By:

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:  310/209-2348
-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010


*Attorneys for Plaintiff*